## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

```
IN RE LETTER OF REQUEST           )
FROM EQUADOR                      )
IN THE MATTER OF                  )        Misc. No. 08-
FAJARDO V.CHEVRON                 )
```

### GOVERNMENT'S MEMORANDUM OF LAW
### IN SUPPORT OF APPLICATION FOR ORDER

This memorandum of law is submitted in support of the Application for an Order pursuant to Title 28, United States Code, Section 1782, in order to execute a letter of request from Equador. A copy of the translation is attached.

FACTUAL BACKGROUND:

Litigation is being conducted before the Superior Court of Nueva Loja, Equador. The litigation relates to Delaware incorporation matters.

EVIDENCE SOUGHT:

The Equador authorities seek information from the Delaware Secretary of State's Office which resides in this District. The authority for this Court to accede to this request is contained in Title 28, United States Code, Section 1782, which states in part:

(a)  The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the

court.   By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement.  The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing.  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

The proper criteria for determining whether the court should exercise its discretion in favor of executing the request are outlined in *In Re Request for Judicial Assistance from the Seoul District Criminal Court*, 555 F.2d 720, 723 (9th Cir. 1977) (citation omitted):

> Under the statute the only restrictions explicitly stated are that the request be made by a foreign or international tribunal, and that the testimony or material requested be for use in a proceeding in such a tribunal.... [and] that the investigation in connection with which the request is made must relate to a judicial or quasi-judicial controversy.

Moreover, " (t)he judicial proceeding for which assistance is sought ... need not be pending at the time of the request for assistance; it suffices that the proceeding in the foreign tribunal and its contours be in reasonable contemplation when the request is made." *In Re Letter of Request from the Crown Prosecution Services of the United Kingdom*, 870 F.2d 686, 687 (D.C. Cir. 1989). The letter of request in this case shows that the information sought is for use in such proceedings in Equador and hence the request comes well within those circumstances

contemplated by Congress in expanding the Federal Courts' authority to act in such matters. *In Re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d 686, 689-91 (D.C. Cir. 1989); *In Re Letters Rogatory from the Tokyo District, Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976). Therefore, I ask this Court to honor the request for assistance.

The reception of letters of request and the appointment of a Commissioner to execute them are matters customarily handled ex parte, and persons with objections to the request raise those objections by moving to quash any subpoenas issued by the Commissioner. *Id.*

**WHEREFORE**, the United States requests that the Court issue an Order, in the form, appended hereto, appointing a Commissioner in order to execute the request for assistance.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

BY: _____
David L. Hall
Assistant U.S. Attorney
1007 N. Orange Street
Wilmington, DE   19801
(302) 573-6277

Dated: 2 JUNE 08

ON BEHALF OF THE REPUBLIC AND BY AUTHORITY OF THE LAW, DOCTOR
GERMAN YANEZ RUIZ, PRESIDENT OF THE SUPERIOR COURT OF JUSTICE OF
NUEVA LOJA ISSUES:

## LETTERS ROGATORY

In the matter of  trial No. 002-2003 that for INDEMNIFICATION  FOR DAMAGES is
presented by AB. PABLO FAJARDO MENDOZA, JUDICIAL PROCURATOR, against
CHEVRONTEXACO CORPORATION:

**PRESIDENCY OF THE SUPERIOR COURT OF JUSTICE.- Nueva Loja, October
29, 2003.- At 17h55.-** "...Pursuant to the petition presented at 17h40 by the
abovementioned Common Procurator Doctor Alberto Wray, we order that: letters
rogatory should be sent pertaining to paragraphs I, II and III, using the corresponding
diplomatic channels to that effect, and with regards to which the translation to the English
language of that which is pertinent is ordered, on the part of Dr. Ana Lucía Jaramillo,
Expert Interpreter, who is designated as such in order that she may proceed to the
translation of that which is pertinent in the three cases, to the English language, and as
soon as the brief be returned, it be incorporated to the proceedings as well as their
translation to Spanish by the designated Expert, who shall take possession of her charge
at a working date and time, from November 4 of the present year on.- s) Dr. Alberto
Guerra Bastidas, President of the Superior Court of Justice of Nueva Loja.- I certify.- Att.
Liliana Suárez N., Secretary of the Court.- **PART PERTAINING TO PETITION: III.-**
That by means of letters rogatory sent through the corresponding diplomatic channels, the
office known as Department of the Delaware Division of Corporations, Expedited
Service, in the State of Delaware, United States of America, be requested to remit a
certified copy of the regulations pertaining to corporations of the State of Delaware: Code
of Delaware, Title 8: Corporations" with an indication that they are still in force and since
when they have been in force.- s) Dr. Mónica Pareja, attorney for the plaintiffs.

Sincerely,

Dr. Gemán Yánez Ruiz
**PRESEDENT OF THE SUPERIOR
COURT OF JUSTICE OF NUEVA LOJA**

**PRESIDENT OF THE SUPERIOR COURT OF JUSTICE – Nueva Loja, 2 January 2006 –
0800.** In my capacity as President of the Superior Court of Justice in Nueva Loja, a position to
which I was appointed by the Tribunal of this Court on January 18, 2006 – pursuant to the
written submissions to this court by the prosecution and the defense in the present case, it is
hereby ordered:

**Let the record show:** The submission of Dr. Adolfo Callejas Ribadeneira, principle attorney for
the defense, on December 20, 2005 at 9:45 a.m. and 10:48 a.m., containing two checks for
$2,500 and $5,000 respectively; pursuant to the content of the submission, the value of these
checks is to be paid to scientists Marcelo Echeverría and Gerardo David Barros, experts
appointed by the President, the receipts for which shall be entered into the record of this case.
As established by the secretary of this court, who observed that the presentation made by Pablo
Fajardo, attorney for the plaintiffs, on November 15, 2005 at 5:35 p.m., the report prepared by
Dr. Gino Bianchi regarding the inspection of pit SHUSHUFINDI– 48, may not be considered by
this court because it was submitted after the prescribed deadline. **Let the record show:** The
submission of Dr. Alberto Wray, principle attorney for the plaintiffs, on December 22, 2005 at
8:45 a.m., regarding the same; with respect to the contents of the submission, official comment is
suspended until the procedurally appropriate moment. **Let the record show:** The submission of
Dr. Alberto Wray on December 22, 2005 at 5:05 p.m.; with respect to the contents of the
submission, plaintiffs are ordered to respect the finding on the issue as decided on December 16,
2005. **Let the record show:** The submission of Dr. Alberto Wray on December 22, 2005 at 5:10
p.m.; with respect to the contents of the submission that relate to the Defendant's expert report,
submitted November 23, 2005, Plaintiff's claim is denied as inadmissible because the report did
not contain substantial errors. **Let the record show:** The submission of Dr. Alberto Wray on
December 22, 2005 at 5:15 p.m.; with respect to the contents of the submission that pertain to the
inadmissibility of Defendant's report, Plaintiff's request is denied as inadmissible because the
report challenged as having been submitted past the prescribed deadline was in fact submitted to
the court by the defense within the allotted timeframe. **Let the record show:** The submission of
scientist Xavier Grandes Z., inspector of site SHUSHUFINDI-67, on January 9, 2006 at 10:00;
with respect to the contents of the submission, the expert is granted an extension of 5 business
days from the day of this order to submit his response to the questions of opposing counsel. **Let
the record show:** The submission of Dr. Alberto Wray on January 10 at 5:45 p.m. with 9
annexed pages containing the observations of the report presented by scientist José Robalino,
expert hired by the Plaintiffs for the judicial inspection of Well SACHA-57; concerning the
contents of the submission, the total approval of the report expressed by the Plaintiff shall be
kept in mind. **Let the record show:** The submission made to the Secretariat of the President on
January 11, 2006 at 3:15 p.m. by Mr. Jorge Delgado, expert appointed to analyze and investigate
the video presentation of the judicial inspection of site LAGO AGRIO-2; with respect to the
contents of the submission, the contents of the report shall be made known to the court within the
prescribed term of 5 days. **Let the record show:** The submission of Dr. Adolfo Callegas
Ribadeneira on January 11, 2006 at 3:20 with a 12 page annex containing his pronouncements
regarding the report presented by scientist José Robalino with respect to the judicial inspection of
the Well SACHA-57, taking note of what the report contained as a total and absolute challenge
of the aforementioned report; additionally, scientist José Robalino, in the 15 day period allocated
complied with the demands of the defense with respect to section V, page 18 of the observations
in the reference book. **Let the record show:** The submission of Dr. Adolfo Callegas on January



12, 2006 at 3:00 p.m., with regard to the contents of the report, the issue shall be kept under advisement until the procedurally opportune moment. **Let the record show:** The submission on January 12, 2006 at 3:05 p.m. by scientist Ernesto Baca, expert for the defense for the judicial inspection of Well SHUSHUFINDI-24 for which an extension is requested for the presentation of his report, the request is denied for reasons already explained. **Let the record show:** The submission presented January 12, 2006 at 3:10 by Ernesto Baca, expert for the defense for the judicial inspection of Well SHUSHUFINDI 27, with respect to the contents of the report, an extension of 10 days from the original deadline for the submission of his report by experts for both sides is hereby ordered. **Let the record show:** The petitions from January 12, 2006 at 3:15 p.m. and 3:30 p.m. by scientist Jorge Salcedo González, expert appointed by the defense for the Judicial Inspection of Well SHUSHUFINDI-38; with respect to the contents of the reports, it is ordered that letters be sent to PETROECUADOR and PETROPRODUCCION with the goal of providing to expert the documents contained in the archives of Petroecuador and the former Texaco Consortium with respect to the leaks produced in Well SHUSHUFINDI-38 and their possible magnitude measured from the beginning of Texaco's operations at the site to the end of their operations at the site; also sending the another letter to the NATIONAL OFFICE OF HYDROCARBONS with the goal that the same expert obtain engineering designs and plans for the execution of work approved by National Office of Hydrocarbons for the operation of Well SHUSHUFINDI-38, including relative documents regarding the selection and design of installations, operations, maintenance and transport of the same station. **Let the record show:** The petitions presented January 12, 2006 at 3:20 p.m. and 3:25 p.m. by Dr. Bjorn Bjorkman, expert for the defense, with regard to the contexts of his report a letter shall be sent to the NATIONAL OFFICE OF HYDROCARBONS in the interest of providing the expert with engineering designs and a plan for the execution of work for the operation of Station SACHA NORTE-2, and should include reference instruments from the selection and design of the installations, operations, maintenance and transport of said Station; in the same manner a letter shall be sent to PETROECUADOR and PETROPRODUCCION with the goal of authorizing the expert to access documentation contained in the archives of Petroecuador and the former Texaco Consortium with respect to the leaks produced in the Station SACHA NORTE-2 and their possible magnitude measured from the beginning of Texaco's operations at the site to the end of their operations at the site. **Let the record show:** The petitions from January 12, 2006 at 3:35 p.m. and 3:40 p.m. by Dr. Fernando Morales, expert appointed by the defense for the Judicial Inspection of the SHUSHUFINDI CENTRAL STATION; with respect to the contents of the reports, it is ordered that letters be sent to PETROECUADOR and PETROPRODUCCION with the goal of providing to expert the documents contained in the archives of Petroecuador and the former Texaco Consortium with respect to the leaks produced in the SHUSHUFINDI CENTRAL STATION and their possible magnitude measured from the beginning of Texaco's operations at the site to the end of their operations at the site; also sending the another letter to the NATIONAL OFFICE OF HYDROCARBONS with the goal that the same expert obtain engineering designs and plans for the execution of work approved by National Office of Hydrocarbons for the operation of the SHUSHUFINDI CENTRAL STATION, including relative documents regarding the selection and design of installations, operations, maintenance and transport of the same station. **Let the record show:** The petitions presented January 12, 2006 at 3:45 p.m. and 3:50 p.m. by scientist Jorge Salcedo, expert for the defense for the judicial inspection of Well SHUSHUFINDI-45A containing instruments related to the selection and design of installations, operations, maintenance and transport of the same; with respect to the rest



of the petition a letter shall be sent to the OFFICE OF PETROECUADOR with the goal of facilitating acquisition by the same expert of information regarding leaks produced in Well SHUSHUFINDI-45A and their possible magnitude measured from the beginning of Texaco's operations at the site to the end of their operations at the site; reviewing the pertinent information from the archives of Petroecuador and the former Texaco Consortium. The information that the expert will obtain shall be shared between experts from both sides. **Let the record show:** The report presented on January 16, 2006 at 4:00 p.m. by scientist Franciso Viteri, expert for the Plaintiffs for the judicial inspection of SHUSHUFINDI CENTRAL STATION, which contains an annex to the expert report of 283 pages, the contents of the report are to be kept under advisement for a common term of 50 days. **Let the record show:** The report with a 2 page annex presented on January 16, 2006 at 4:05 p.m. by José Robalino, expert for the Plaintiffs for judicial inspection of Well SACHA-18 containing answers to the questions posed by the defense, shall be placed under advisement for a term of 5 days. **Let the record show:** the report presented by Dr. Alberto Wray on January 16, 2006 at 4:10 p.m. containing his observations the report presented by Dr. Gino Bianchi Mosquera, expert for the defense for the inspection of Well SACHA-51 shall be kept under advisement as a total challenge of the facts presented by said expert. **Let the record show:** the report presented by Dr. Adolfo Callejas on January 17, 2006 at 4:15 p.m., containing his observations regarding the report presented by Dr. Gino Bianchi, expert for the defense for the judicial inspection of Well SACHA-51, shall be kept under advisement of a total approval of what was said in that report and in the principle report. **Let the record show:** the report submitted by Dr. Adolfo Callejas on January 17, 2006 at 4:18 containing his observations regarding the report presented by scientist Ernesto David Baca, expert for the defense for the judicial inspection at the site identified as Well SHUSHUFINDI-4, with respect to the contents of the report, the total approval of said report shall be noted. **Let the record show:** the report submitted on January 17, 2006 at 4:20 p.m. with 408 annexed pages by scientist Ernesto David Baca, expert for the defense for the judicial inspection of Well Shushufindi-13, the contents of the report shall be placed under advisement for a term of 50 days. **Let the record show:** the report presented on January 17, 2006 at 4:22 p.m. by Professor Fernando Morales, expert for the defense for the inspection of Shushufindi Central Station, which consisted in 1,140 pages, the contents of that report shall be transferred between parties for a term of 60 days. **Let the record show:** the petition presented on January 19, 2006 at 3:00 p.m. by Mr. Jorge Salcedo Gonzáles, expert for the defense for the judicial inspection of Well SHUSHUFINDI-45A, with respect to the contents of the report, a 10 day extension shall be granted, at the end of which the report the expert will present his report; an equal extension is granted to the expert for the Plaintiffs with regard to his report on the same site. **Let the record show:** the report submitted by Dr. Adolfo Callejas Ribadeneira on January 19, 2006 at 3:05 p.m. with a 66 page annex containing observations regarding the report presented by scientist José Robalino, expert for the Plaintiffs for the judicial inspection of Well Shushufindi-04, the complete challenge of that which does not favor the defense shall be noted; additionally, it is ordered that expert José Robalino respond to the questions presented in PETITION V, pages 20-21 within 25 days. **Let the record show:** the report presented by Dr. Alberto Wray on January 19, 2006 at 5:15 containing observations regarding the expert report presented by scientist José Robalino, expert for the Plaintiffs for the inspection of well SHUSHUFINDI-04, with respect to the contents of the report, the complete approval of the report shall be noted. **Let the record show:** the report submitted by Dr. Alberto Wray on January 20, 2006 at 3:25 p.m. with 124 annexed pages containing observations regarding the report submitted by scientist Ernesto David Baca, expert

for the defense for the judicial inspection Well SHUSHUFINDI-04, the content of the report shall be kept under advisement until correct procedural moment conforming to the law; additionally expert Ernesto Baca shall expand his report in conformity with the requirements in Part F), a,b,c,d,e,f,g,h,y,j,k,l,m,n, pages 20-21 and submit the product within the term of 25 days. **Let the record show:** the report presented on January 20, 2006 at 3:30 p.m. with a 230 page annex by scientist José Robalino Hidalgo, expert for the Plaintiffs for the judicial inspection of Well SHUSHUFINDI-13, the contents of the report shall be kept under advisement for a period of 50 days. Let the record also show the report from January 23, 2006 at 3:30 p.m. with a 421 page annex signed by scientist Ernesto Baca, expert for the defense for the judicial inspection of Well SHUSHUFINDI-24, the contents of the report shall be kept under advisement for a period of 50 days. **Let the record show:** the report presented on January 23, 2006 at 5:45 p.m. 257 pages annexed signed by Dr. Luis Villacreces Carvajal, expert for the Plaintiffs for the judicial inspection of Well SHUSHUFINDI-24, the contents of which shall be shared between the parties for a common term of 50 days. Let the record also show the report submitted without number on January 24, 2006 by Mr. Aníbal Bravo, Director of Sucumbíos Radio, and note the content thereof. **Let the record show:** the report presented by Dr. Adolfo Callejas Ribadeneira on January 27, 2006 at 9:40 a.m., with respect to the contents of the report, the pertinent transaction is indicated above. **Let the record show:** the report presented by Dr. Alberto Wray on January 27, 2006 at 9:15 a.m., 9:20 a.m., 9:22 a.m., containing the checks made out to scientists Luis Albuja Viteri, Jhonny Zambrano, José Echeverría and Gerardo David Barros, expert scientists appointed by the Presidency, the values of which should be given to the respective experts, with receipts written for each transaction. **Let the record show:** the report presented by Dr. Alberto Wray on January 27, 2006 at 5:10 p.m., with regard to the contents of the report and with respect to the preview in Part V of the same, the secretary of the Court must indicate on the record the decisions if the inspection of a particular site has been demanded or not by the prosecution only; furthermore, Dr. Alberto Wray shall confirm the contents of this record in his capacity as attorney for the Plaintiffs, for a term of 10 days. **Let the record show:** the report presented by Dr. Alberto Wray on January 27, 2006 at 5:15 p.m., with regard to the contents of the same, scientist Jhonny Zambrano shall be transferred for a term of 5 days; additionally, the Plaintiffs shall aggregate the documentation and shall refer it in pertinent part to the President; clarification notwithstanding, the inspections in which scientist Jhonny Zamborano participated were staffed by a team also consisting of scientists Jorge Jurado, Gererdo Barros, Luis Albuja and Galo Albán. **Let the record show:** the report submitted by Dr. Alberto Wray Espinoza on January 27, 2006 at 5:50 p.m.; let also be shown the report and 28 page annex presented by Dr. Alberto Ribadeniera on January 30, 2006 at 5:00 p.m.; with respect to the contents of the reports and with respect to the indication of dates upon which the inspections are to take place, the prosecution and the defense shall proceed to diminish their respective calendars, specifying the inspections that shall be voided upon their own determinations; ultimately the President of the Court shall determine which inspections shall be carried out, and shall designate a Wednesday and Thursday of a given week, preferably, as the days on which the inspections will take place. **Let the record show:** the report presented by Jorge Salcedo González, expert for the defense for Well SHUSHUFINDI-18, with respect to the contents of the report an extension of 10 days is granted, at the end of which the report is to be presented – the same with respect to expert report of the Plaintiffs' expert. **Let the record show:** the petition presented by Mr. Jorge Salcedo González, appointed by the defense for the inspection of Well SHUSHUFINDI-25, with respect to the contents of the report an extension of 10 days is granted for the completion of the report,

the same extension is also granted to the Plaintiffs' expert for the report of the same site. **Let the record show:** the presentation made to the Court on January 31, 2006 at 10:05 by scientist Xavier Grades Z., expert for the Plaintiffs, with respect to the contents thereof, send a letter of formality to Dr. Blanca Viera, National Director of the Department of Ecuadorian Accreditation (OAE), in order that scientist Xavier Grandes be granted access to the facilities of Expediente Laboratory HAVOC, and the scientist's credentials and purpose shall be detailed in the petition for access. **Let the record show:** the presentation made to the Court on January 31, 2006 at 10:05 a.m. by scientist Xavier Grades Z., expert for the Plaintiffs, with respect to the contents of the petition, it shall be brought to the attention of Victor Hugo Paredes, Dean of the School of Engineering for Geology, Mines, Oil and the Environment at the Central University of Ecuador that scientist Xavier Grandes Z. is to be granted access to facilities. **Let the record show:** the report presented on January 31, 2006 at 10:10 a.m. by scientist Xavier Grandes Z., expert for the Plaintiffs, pursuant to that report, it shall be brought to the attention of scientist Fausto Moreno, manager of HAVOC Laboratory, in a detailed petition containing two attached pages with the solicited information, that scientist Xavier Grandes Z. shall be given access to the facilities of the laboratory. **Let the record show:** official report No. 009-GG-RA-S from February 2, 2006 signed by Mr. Diego Muños, general manager of Amazonas radio; the contents of the report shall be kept under advisement until the proper procedural moment. **Let the record show:** the report presented February 1, 2006 at 5:00 p.m. by scientists Johnny Zambrano, Gerardo Barros, Galo Albán, Luis Albufa and Jorge Jurado, **resolving experts** designed by the President of this Court, consisting of 190 sheets relating to the judicial inspection completed at Well SACHA-53; the contents of the report shall be kept under advisement by both parties for a term of 60 days. NOTARIZED


Dr. Germán Yánez Ruiz.
PRESIDENT OF THE SUPERIOR COURT OF NUEVA LOJA.


Certified.-


                    Ab. Liliana Suárez N.
                    SECRETARY TO THE PRESIDENT.


Yo, Israel Moya, con perfecto conocimiento del idioma inglés y español, certifico que la traducción que antecede es una traducción fiel del texto de la providencia de día 2 de febrero de 2006, a las 08H00, emitida por la Presidencia de la Corte Superior de Justicia de Nueva Loja.


Israel Moya
**TRADUCTOR**







The Secretary of State of the United States of America
hereby requests all whom it may concern to permit the citizen/national
of the United States named herein to pass without delay or hindrance
and in case of need to give all lawful aid and protection.

Le Secrétaire d'Etat des Etats-Unis d'Amérique
prie par les présentes toutes autorités compétentes de laisser passer le citoyen
ou ressortissant des Etats-Unis titulaire du présent passeport, sans délai ni
difficulté et, en cas de besoin, de lui accorder toute aide et protection légitimes.

El Secretario de Estado de los Estados Unidos de América por el presente solicita a
autoridades competentes permitir el paso del ciudadano o nacional de los Estados Unidos
aquí nombrado, sin demora ni dificultades, y en caso de necesidad, prestarle toda la
ayuda y protección lícitas.

SIGNATURE OF BEARER /SIGNATURE DU TITULAIRE/FIRMA DEL TITULAR

**NOT VALID UNTIL SIGNED**

PASSPORT
PASSEPORT
PASAPORTE

USA

**UNITED STATES OF AMERICA**

Type / Type / Tipo   Code / Code / Código   Passport No. / No. du Passeport / No. de Pasaporte
P                    USA                    600074889

Surname / Nom / Apellidos
MOYA
Given names / Prénoms / Nombres
ISRAEL
Nationality / Nationalité / Nacionalidad
UNITED STATES OF AMERICA
Date of birth / Date de naissance / Fecha de nacimiento
01 Oct 1976
Sex / Sexe / Sexo   Place of birth / Lieu de naissance / Lugar de nacimiento
M                   CALIFORNIA, U.S.A.
Date of issue / Date de délivrance / Fecha de expedición
22 Nov 2002
Date of expiration / Date d'expiration / Fecha de caducidad
21 Nov 2007
Amendments / Modifications / Enmiendas
See Page 24

Authority / Autorité / Autoridad
Special Issuance
Passport Agency

P<USAMOYA<<ISRAEL<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<
6000748896USA7610019M0711216<<<<<<<<<<<<<<02





PRESIDENCY OF THE SUPERIOR COURT OF JUSTICE.- Nueva Loja, October 29, 2003.- At 17H55. With notification to the contrary, the proof briefs presented on this date by the procedure parties are provided; in attention to petition by Dr. Adolfo Callejas, Judicial Procurator for the company CHEVRONTEXACO, that was presented in 10 leaves at 17H10, we instruct: let the judicial inspections to the production station "Lago Agrio Norte", "Shushufindi Central", "Sacha Central", "Refinería de Shushufindi", "Estacion Palanda", of "Petrosud-Petroriva", those of Petroproduccion situated in the petroleum camps that were of the former Petroecuador-Texaco (previously CEPE-TEXACO) consortium, take place, as is so requested in numerals 91 to 96 of the writ that is provided, for the purposes and ends indicated in the same; to that effect, the communications that correspond in each case shall be sent so as to ensure that the facilities that are warranted and make this enterprise feasible are made available, as is requested in numeral 97, send communication to the Director of the Petroleum Center of the Escuela Politecnica Nacional and the Dean of the Faculty of Engineering in Geology, Mines and Petroleum of the Universidad Central del Ecuador, so that they may send to this Presidency a list containing the largest possible number of technicians that are specialized in hydrocarbons, accompanied by the corresponding resumes, for the purposes of choosing, designating, and swearing in the Expert or Experts that should counsel and practice the requested expertises; send communication in the manner that has been requested in numerals 98, 99, 100, 104, 105, 106 and 107 of the writ that is provided; let the publication known as "The weight of disease in the provinces of Ecuador" be incorporated into the process, in accordance to what is requested in numeral 101, and advice on the content of said study in benefit of the petitioner; practice the proceedings for judicial inspection of the Petroproduccion oil wells that are specified and singled out in numerals 102 and 103 take place, to this effect, the Experts that will participate in the same, as well as in the inspections



pointed out initially, shall be designated and sworn in according to Law with at least 48 hours anticipation to their verification, in each case, or in its defect, at the same moment as the proceedings; the Experts that intervene will be granted a prudent term for the presentation of the respective report, to this effect the facilities necessary for the practice of judicial proceedings are granted, send communication to the pertinent authorities as has been requested. The abovementioned expertises will take place beginning at 09H00 of November 25, 2003, and for the time that allows the completion of each and every single one of them.- In attention to the petition presented by the same party at 17H13, we instruct: that the contents of the same are to be taken into account and to resolve about the formulated disqualification at the opportune procedural moment.- In attention to the petition comprising the writ presented at 17H15, we instruct: that that which is contained in literals A) and B) is to be taken into account, and that the revocatory requested in literal C) is rejected insofar as pertinent, and reject the petition comprising the writ of 17H17 in attention to the authority stated in Art.293 of the Civil Procedural Code.- The impugnation comprising the writ of 17H18 is to be taken into account.- Let the documentation specified in the writ presented by Dr. Adolfo Callejas at 17H19 of the same day be incorporated into the process, and let their contents be taken into account.- Let the sworn declarations of Dr. Eduardo Ortega Gomez, Dr. Fernando Saltos Alvite, Engineer Javier Espinosa Terán, Engineer Carlos Romo Leroux Morales, and Economist Jorge Pareja Cucalón be received, in accordance to the interrogatory contained in order in the Paragraphs I to V of the writ presented by Dr. Adolfo Callejas Rivadeneria at 17H20 of this date, to that effect, and having justified that the domiciles of the abovementioned witnesses are in the cities of Quito and Guayaquil, send deprecatory to Mr. President of the Superior Court of Justice of Quito and Mr. President of the Superior Court of Justice of Guayaquil so that



they may, with previous notification of date and time, receive said declarations, it will
be send sufficient official writ so as to comply with what is requested within a term of
ten days.- In response to the petition presented at 17H21 by the Procurator for the
defendant, we instruct: that the sworn declaration of Dr. Laura Caroline Green be
received, in accordance to the interrogatory contained in Paragraph VII, to that effect,
the English translation of the interrogatory will be sent; done, it will be incorporated
into the process and will be translated into the Spanish language by an Expert that will
be designated and sworn in in due time; to the indicated effect, since it is asseverated
that the witness has her domicile in the city of Cambridge, Massachussets, United States
of America, let the corresponding letters rogatory be sent to the Consul of Ecuador in
the city of New York, and who, to that end, is granted the extraordinary term of three
months, as well as the authority to indicate day and time, designate and swear in an
interpreter, should the case warrant.- Let the testimony of Dr. José Varea Terán, in
accordance to the interrogatory contained in Paragraph VIII of the writ presented at
17H22, be received, and to which end deprecatory is sent to Mr. President of the
Superior Court of Justice of Quito, who will indicate opportune day and time to that
effect, sending sufficient official writs to allow compliance with what is requested in a
term of ten days; done, incorporate to judicial decrees.- Likewise, let the sworn
statement of Mr. Roy Dale Roberts in accordance to the interrogatory formulated to him
and that is contained in Paragraph IX; to that effect, and in attention to the statement
that said witness has his domicile in the city of Houston, Texas, United States of
America, let letters rogatory be sent to the Consul of Ecuador in the city of Houston,
and who is granted the extraordinary term of three months on account of the distance, as
well as the authority to indicate day and time to that effect, and that of designating and
swearing in an interpreter, should the case warrant, to this end the



English translation of the interrogatory will be sent, done, it will be incorporated into the process, and if necessary, an Expert will be designated and sworn in to translate it.- In attention to the petition presented by the Judicial Procurator of the defendant Company at 17H38, we instruct: let the declaration of Mr. John Brix Gustavson, in accordance to the interrogatory formulated to him and that is contained in Paragraph X, be received, to that effect, and in attention to the statement that said witness has his domicile in the city of Denver, Colorado, United States of America, let letters rogatory be sent to the Consul of Ecuador in the city of Boulder, in the same state of Colorado, and who is granted the extraordinary term of three months on account of the distance, as well as the authority to indicate day and time to receive the declaration, designate and sear in and interpreter, the English translation of the interrogatory will be sent, done, it will be incorporated into the process, and if necessary, an Expert will be designated and sworn in to translate the declaration.- In accordance to the authority stated in Art. 293 of the Civil Procedural Code, instruction of 09H20 of October 29, 2003, is cancelled and in its place, once the domicile of Mr. Manuel Navarro and Engineer Alejandro Segovia has been justified with the documents that since enclosed are ordered to be incorporated into the judicial decrees, let the sworn testimonies of the abovementioned witnesses be received, in accordance to the interrogatory formulated to them and that are contained in Paragraphs I and II of the briefs of proof presented at 09H10 on October 29, 2003 of this year; to this effect send deprecatory to Mr. President of the Superior Court of Justice of Quito, who has authority to indicate opportune day and time, within a term of ten days that are granted in light of the distance, sufficient official writs will be sent; this, in light of the petition presented by Dr. Alberto Wray, Judicial Procurator of the plaintiffs, in a writ at 17H39.- Likewise, with regards to the petition presented at 17H40 by the abovementioned Common Procurator Dr. Alberto Wray, we instruct: let the



letters rogatory referred to in Paragraphs I, II and III be sent, using to that effect the corresponding diplomatic channels, and to the effect of which the pertinent translation to the English language in ordered, on the part of Dr. Ana Lucía Jaramillo, Expert Interpreter, who is designated as such so that she may proceed with the translation of that which pertinent in the three cases, to the English language, and once official writ is returned, it will be incorporated into the judicial decrees, as well as their translation to Spanish by the designated Expert Interpreter, who will be sworn in during office days and hours, after Tuesday, November 4 of the present year. - Likewise, and with regards to the petition presented at 17H41 by the Common Procurator Dr. Alberto Wray, we instruct: let the letters rogatory referred to in Paragraphs I, II and III be sent, with the purpose and ends specified in each one, with the Authority of indicating day and time to receive the declaration, in Spanish or English language, of Mr. Daniel J. King, in accordance to the interrogatory formulated to him and that is contained in Paragraph III, already mentioned, upon which and once the entirety of the official writ has been incorporated into the process, its translation from the English to the Spanish language will proceed; to the effect of sending sufficient official writ of the petition and other documents necessary for sending letters rogatory, we instruct the translation of the same to the English language, and to which effect Dr. Ana Lucía Jaramillo is designated as Expert Interpreter, and who will be sworn in during office days and hours, after the next Tuesday, November 4 of the present year.- In response to the petition stated in the writ that the Common Procurator for the plaintiffs presents at 17H42, we instruct: to take into account at the opportune procedural moment, the specific and concrete impugnation that is stated by Paragraphs I, II and XIV; the reservation of claim that is referred to in Paragraph III shall be taken into account; let things proceed in the way that is requested by Paragraph IV by means of polite communication or also by means of letters rogatory to be sent to the judicial authorities of the State of Massachussets as is requested by Paragraph IV; let the certified copies



referred to in Paragraph V be incorporated into the process; let the copies that are specified in literals a and b of Paragraph VI be incorporated into the process; let the seven certificates referred to in Paragraph VII be incorporated into the process; let the certified copy of the public instrument of adjudging that is specified in Paragraph VIII be incorporated into the process; communicate the Registers of the Property in the provinces of Orellana and Sucumbios for the purpose that is stated in Paragraph IX; communicate the President of the Honorable National Congress to the effect of that which is requested by Paragraph X; communicate the Dirección Nacional de Hidrocarburos for the purpose of sending to this judicature the documents referred to in literals a), b) and c) of Paragraph XI; communicate the Ministry of Health for the purposes referred to in Pargraph XII; communicate Petroecuador for the purpose of sending to this judicature the determined in Paragraph XIII.- The judicial inspection of the sites and installations destined towards petroleum exploitation and existing in each one of the sites that are specified in numerals 1 to 30 of Paragraph I of the brief of proof presented by the Common Procurator of the plaintiffs at 17H45 on October 29, 2003, will take place starting on 09H00 of next Tuesday, November 25, 2003, and for the time that allows the accomplishment of each and every one of them, having the inspection to comprise, in each case, the surrounding areas, including the rivers, water courses, and swamps existing in the vicinity, and with the specific purpose to verify the environmental effects of the activities related to the exploitation of hydrocarbons, as is indicated. Towards the furtherance of said goal, let Experts in applied ecology and environmental engineering intervene; the Experts in question will be designated and sworn in with at least 48 hours anticipation to verify the expertise, or, in its defect, previous to the verification of the same; to them, and in each case, will be granted a prudent term for the presentation of the respective report; likewise, let



an expert assesment take place, destined to verify the environmental effects of the activities related to the exploitation of hydrocarbons, in all the camps exploited by TEXACO in its condition as operator of the consortium, in which both Gulf Company and CEPE, later Petroecuador, initially had interests; that the Experts to be designated to the effect shall emit their report according to that which is concretely specified in literals a), b), c), d), and e) of Paragraph II of the writ that is provided; in this same proceeding will intervene the Experts that are designated and sworn in for the inspection that is indicated in Paragraph I; to the effect of the corresponding designation of Experts, without excluding that the parties reach an agreement over the matter, with regards to names or their number, send communication to the entitled person of the MINISTERIO PUBLICO and the Director of the Superior Postgraduate Institute of the Faculty of Engineering, Mines, Petroleum and Environment of the Universidad Central del Ecuador, so that they may send to this judicature the list of names with corresponding resumes of the Experts that are qualified in the areas of Applied Ecology and Environmental Engineering; the Experts that are designated to this effect will have access to the information available in Petroecuador, the Direccion Nacional de Hidrocarburos or any other Institution of the State, for which reason, in order to ensure the faithful accomplishment of its assignment and should the case be, this judicature will adopt the provisions that are necessary.- The objection with regards to the legitimacy of the documents that are singled out in the writ presented by Dr. Adolfo Callejas Ribadeneira at 17H47 that is provided will be taken into account at the opportune procedural moment, for which reason, consequently, the requested revocatory of the pertinent parts of the instructions referred to in the same is denied.- And, finally, likewise, with respect to the objection on the legitimacy of the documents incorporated into the process, by petition of the Common Procurator of the plaintiffs, by means of instruction of 17H45 on October 28,



2003, will be taken into account at the opportune procedural moment, for which reason, consequently, the revocatory of the instruction referred to in the writ presented in this judicature at 17H49 by the mandatary of the defendant company, is denied. –NOTIFY.


(signature)

Dr. Alberto Guerra Bastidas

PRESIDENT OF THE SUPERIOR COURT

OF JUSTICE OF NUEVA LOJA


I certify         (signature)

              Ab. Liliana Suarez N.

              SECRETARY OF THE COURT


RECORD:. In Nueva Loja, on the thirty-first day of October of the year 2003, at twelve hundred hours, let the preceding instruction be NOTIFIED by means of warrants, to: CHEVRONTEXACO at box 63.- To: DR. ALBERTO WRAY, at box 78.- To: COMMISIONER OF DEFENSORIA DEL PUEBLO IN SUCUMBIOS at box 05.- I CERTIFY.


              (signature)

              Ab. Liliana Suarez N.

              SECRETARY OF THE COURT



Lear (loja)    10

Eighty two 82

**PRESIDENCY OF THE SUPERIOR COURT OF JUSTICE.- Nueva Loja, May 14, 2003.- 16h10.-** Realizing that with the complaint proposed by doctor Alberto Wray and others, it is necessary to proceed to notify the defendant through Judicial Authority of the State of California, United States of America, by means of regulatory letters, referred in the proceeding writ (auto) that qualified the initial petition and, therefore, requiring in order to remit sufficient official writ (despacho), that the complaint and annexes attached to it, initial writ and the present provision (providencia) with its pertinent consequence, with exception of the instruments in leaf 46 to 51 and leaf 53 to 72, are translated to the English Language, and based on the regulation of Article 275 and 268 of the Civil Procedural Code, doctor Ana Lucia Jaramillo is designated as translator, in charge of translating the mentioned documents from Spanish to English, for which, previous the accomplishment of formalities, the translator will take possession of the referred charge next Tuesday May 20, 2003 at 14h30, after which the resulting translation must be presented in the term of ten days.- Send notice of the content of this writ to the designated interpreter.- NOTIFY/

(signature)

Dr. Alberto Guerra Bastidas

PRESIDENT OF THE SUPERIOR COURT OF NUEVA LOJA

(seal) Secretary of the
Presidency of the Superior Court
Nueva Loja



Leai (loja)

**I certify.-**

**(signature)**

**Ab. Liliana Suárez N.**

**SECRETARY OF THE PRESIDENCY**

REASON:  In Nueva Loja city, May fifteen, year two thousand and three, at seventeen hours, I NOTIFIED with the preceding writ (providencia), through warrant, to DR. ALBERTO WRAY, JUDICIAL PROCURATOR of Angel Paiguage, and as COMMON PROCURATOR of the other plaintiffs, in the judicial mailbox No. 78, designated by him.- I CERTIFY.

**(signature)**

**Ab. Liliana Suárez N.**

**SECRETARY OF THE PRESIDENCY**



(seal) Secretary
Presidency of the Superior Court
Nueva Loja

Lear (roja)

Eighty one 81

**PRESIDENCY OF THE SUPERIOR COURT OF JUSTICE.-** Nueva Loja, May13th 2003.-
**11h40.-WHEREAS:** In virtue of reason established by the Secretary of the Superior Court of
Justice of Nueva Loja, and based on the precept contained in the second clause of Article 41
of the **Ley de Gestión Ambiental published in the Official Registry (R.O. # 245, July 30
1999)**, I assume jurisdiction for the preceding complaint, which being clear, complete and
complying with the requirements of Article 71 of the Civil Procedural Law, I accept and admit
to summary verbal procedure, according to regulations comprehended in article 43 of the
mentioned **Ley de Gestión Ambiental**, and Article 843 and following of the Civil Procedural
Law; consequently, with copy of the complaint and first writ (providencia) regarding it,
proceed with the citation of Mr. DAVID O'REILLY, legal representative of CHEVRON
TEXACO CORPORATION, in the place established for this purpose, which is the principal
offices of the company, located at 6001 BOLLINGER CANYON ROAD, SAN RAMON,
CALIFORNIA, UNITED STATES OF AMERICA; in order to do so we ask by means of
rogatory letters, that this diligence be practiced by the Judicial Authorities of the State of
California, United States of America, through the Ministry of Foreign Affairs and the
corresponding diplomatic channels. The defendant must be warned, at the moment of
citation, with the obligation to designate judicial domicile, in front of this Authority, in order to
receive future notifications. Remit for the indicated purpose.- Incorporate to the process the
attached documentation of 72 leaves.- Notice the judicial mailbox designated by the Judicial
Procurator of Angel Piaguage Lucitante, doctor Alberto Wray, whose intervention in the name
of the plaintiffs is ratified in merit of the petitions attached to the initial action, recognizing him
as Common Procurator of the other actors.- PROCEED TO NOTIFICATION AND CITATION.

(signature)
Dr. Alberto Guerra Bastidas
PRESIDENT OF THE SUPERIOR COURT
OF NUEVA LOJA

(seal) Su
Presidency of the Super Court
Nueva

I certify.-

(signature)

Ab. Liliana Suárez N.

SECRETARY OF THE PRESIDENCY

REASON:  In Nueva Loja city, May thirteen, year two thousand and three, at seventeen hours thirty minutes, I NOTIFIED with the preceding writ (providencia), through warrant, to DR. ALBERTO WRAY, JUDICIAL PROCURATOR of Angel Paiguage, and as COMMON PROCURATOR of the other plaintiffs, in the judicial mailbox No. 78, designated by him.- I CERTIFY.

(signature)

**Ab. Liliana Suárez N.**

**SECRETARY OF THE PRESIDENCY**

(seal) Presidency of the Superior Court of Nueva Loja



Leaf (foja)

Seventy three 73

Mister President of the Superior Court of Nueva Loja:

MARIA AGUINDA SALAZAR, widow, 54 years old; CARLOS GREFA HUATATOCA, married, 42 years old; CATALINA ANTONIA AGUINDA SALAZAR, married, 53 years old; LIDIA ALEXANDRA AGUINDA AGUINDA, married, 29 years old; PATRICIO ALBERTO CHIMBO YUMBO, single, 37 years old; CLIDE RAMIRO AGUINDA AGUINDA, single, 30 years old; LUIS ARMANDO CHIMBO YUMBO, married, 41 years old; BEATRIZ MERCEDES GREFA TANGUILA, single, 29 years old; LUCIO ENRIQUE GREFA TANGUILA, married, 27 years old; PATRICIO WILSON AGUINDA AGUINDA, married, 32 years old; domiciled in Rumipamba Community, Orellana County, Orellana Province; CELIA IRENE VIVEROS CUSANGA, married, 35 years old; FRANCISCO MATIAS ALVARADO YUMBO, married, 54 years old; FRANCISCO ALVARADO YUMBO, married, 51 years old; OLGA GLORIA GREFA CERDA, married, 38 years old; LORENZO JOSE ALVARADO YUMBO, married, 41 years old; NARCISA AIDA TANGUILA NARVAEZ, married, 35 years old; BERTHA ANTONIA YUMBO TANGUILA, married, 36 years old; GLORIA LUCRECIA TANGUILA GREFA, married, 53 years old; FRANCISCO VICTOR TANGUILLA GREFA, married, 52 years old; ROSA TERESA CHIMBO TANGUILA, married, 45 years old; JOSE GABRIEL REVELO LLORE, single, 61 years old; MARIA CLELIA REASCOS REVELO, married, 42 years old; MARIA MAGDALENA RODRIGUEZ BARCENES, married, 42 years old; HUGO GERARDO CAMACHO NARANJO, married, 45 years old; JOSE MIGUEL IPIALES CHICAIZA, single, 42 years old; HELEODORO PATARON GUARACA, married, 67 years old; LUISA DELIA TANGUILA NARVAEZ, married, 51 years old; LOURDES BEATRIZ CHIMBO TANGUILA, married, 41 years old; MARIA HORTENCIA VIVEROS CUSANGA, married, 32 years old; SEGUNDO ANGEL AMANTA MILAN, married, 48 years old; domiciled in the locality of Pimampiro, La Joya de los Sachas County, Orellana Province; OCTAVIO ISMAEL CORDOVA HUANCA, married, 68 years old; domiciled in the locality of Dureno, Lago Agrio County, Sucumbios Province; ELIAS ROBERTO PIYAGUAJE PAYAHUAJE, married, 48 years old; JAVIER PIAGUAJE PAYAGUAJE, single, 32 years old; DANIEL CARLOS LUSITANDE YAIGUAJE, single, 37 years old; BENANCIO FREDY CHIMBO GREFA, single, 44 years old; GUILLERMO VICENTE PAYAGUAJE LUSITANTE, single, 44 years old; DELFIN LEONIDAS PAYAGUAJE PAYAGUAJE, single, 68 years old; ALFREDO DONALDO PAYAGUAJE PAYAGUAJE, single, 40 years old; TEODORO GONZALO PIAGUAJE

(seal) Secretary
Presidency of the Superior Court of Nueva Loja



PAYAGUAJE, single, 48 years old; MIGUEL MARIO PAYAGUAJE PAYAGUAJE, single, 37 years old; FERMIN PIAGUAJE PAYAGUAJE, single, 33 years old; REINALDO LUSITANDE YAIGUAJE, single, 62 years old; LUIS AGUSTIN PAYAGUAJE PIAGUAJE, single, 55 years old; ESTEBAN LUSITANDE YAIGUAJE, single, 66 years old; EMILIO MARTIN LUSITANDE YAIGUAJE, single, 68 years old; SIMON LUSITANDE YAIGUAJE, single, 51 years old; ARMANDO WILFRIDO PIAGUAJE PAYAGUAJE, single, 38 years old, domiciled in Secoya de San Pablo de Aguarico community, Shushufindi County, Sucumbios Province; all of Ecuadorian nationality and agriculture workers as profession; and doctor Alberto Wray, married, 56 years old, attorney, domiciled in Quito, as Judicial Procurator of ANGEL JUSTINO PIAGUAGE LUCITANTE, submit to you the following complaint:

I. Background

1.  As a result of the concession agreed upon with the Ecuadorian Government on March 5, 1964, and the contract transference made in its favor by Texas Petroleum Company, the companies Texaco de Petróleos del Ecuador (TEXPET) and Gulf Ecuatoriana de Petróleos acquired rights to explore and exploit hydrocarbons in the oriental region. TEXPET was designated as the Consortium operator, and as such assumed technical responsibility for the execution of exploration and exploitation activities, according to the Joint Operation Agreement (Acuerdo de Operación Conjunta) celebrated on January 1, 1965. The Consortium operator designation was not modified and, on the contrary, was ratified, when the contract between TEXPET, Gulf Ecuatoriana de Petróleos S.A. and the Ecuadorian Government was renegotiated on Agust 6, 1973.

2.  On June 1974, the Corporación Estatal Petrolera Ecuatoriana (CEPE) acquired 25 percent of the TEXPET-Gulf Consortium assets and in May 1977, the company Gulf Ecuatoriana de Petróleos sold to CEPE its shares, with which this state company would own 62.2% of the Consortium assets. In spite of these changes, TEXPET maintained the condition of operator and as such the technical responsibility for the execution of the Consortium activities, until June 30 1990. Nonetheless, TEXPET's participation in the

Leal (loja)

**Seventy four 74**

exploration and exploitation of hydrocarbons in Ecuador did not last but in June 1992, when the contract's term expired.

3.  As technically responsible and executor of the Consortium operations, TEXPET was in charge of the design, construction, installation and operation of the infrastructure and necessary equipment for exploring and exploiting petroleum. During the time of its operation in Ecuador, TEXPET drilled and exploited its wells, built and installed the operation facilities inside what today belongs to Lago Agrio, Shushufindi, La Joya de los Sachas, Cascales, Putumayo and Orellana counties. Detail of these works can be found in Annex A.

4.  TEXPET was a subsidiary of TEXACO INC., subject to the headquarters' policies and guidelines in relation to the economic, technical and administrative matters. In this way, the decisions related to the methods, procedures and exploration and exploitation techniques applied by TEXPET in Ecuador were conceived, or at least known and approved by TEXACO INC.

5.  In the exploration and exploitation of hydrocarbons carried out by TEXACO through and by its subsidiary company TEXPET, were adopted and put in practice methods and procedures that were already abandoned and prohibited in other countries, because of lethal effects for the environment and human health. These methods and procedures are described in paragraph II.

6.  Additionally, these methods and procedures were spread by the Consortium operator through training activities for local technicians. Consequently, when CEPE assumed operations in its charge, they initially reproduced almost all the contaminant practices introduced into Ecuador by TEXACO.

7.  The usage of these methods and procedures introduced, established, and applied by TEXACO caused environmental damage, health damage among the inhabitants, and produced patrimony loss, which without doubt constitutes the biggest

(seal) Secretary
Presidency of the Superior Court
Nueva Loja

Lear (loja)

ecological catastrophe of national history. Description of damages is on record in paragraph III.

8.  Claiming for such damages and demanding reparation, in November 1993, the plaintiffs initiated legal actions against TEXACO INC. in the State of New York, in the United States of America, not only in defense of their own rights but for the rights that other persons of the same class could have, denomination used in the procedural system of the mentioned State to designate people who could find themselves in a common legal position regarding the subject of litigation. The judges and tribunals in the United States of America, not pronouncing themselves about the main subject-matter, resolved that given the nature and characteristics of the complaint, the litigation should be acknowledged and resolved by the Ecuadorian judges; nevertheless, asking that the defendant TEXACO INC. submit to Ecuadorian jurisdiction and waive defenses based on statutes of limitation.

9.  In December 1994, TEXPET suscribed with Petroecuador and with the Ministry of Energy in representation of the State, a memorandum of agreement about environmental remediation works for the purpose of establishing the range of such works and the way in which TEXPET was to be liberated "in front of the Ministry and Petroecuador" from any complaint for environmental impact as a consequence of the former consortium operations. In the context of this agreement, the range of the works was determined in March 1995, and in May of the same year, TEXPET suscribed, with a company selected by them, the execution of works for environmental remediation .

10. On September 30 1998, TEXPET suscribed with Petroecuador and the Ministry of Energy a document denominated Final Act of accomplishment of contract for execution of environmental reparation and liberation from obligations, responsibilities and complaints, in which is stated that with the last of the partial acts of execution of works celebrated in October 16 1997, TEXPET complied all the activities of environmental remediation established by the document of March, 1995.



(seal) S......
Presidency of the Su... Court
.....

Leal (roja)

petroleum industry had been developed alternative procedures to avoid contamination from formation water but also discharge of such wastes in current water or the environment was explicitly prohibited by the legislation of the petroleum producer states in the United States if America, like Texas since 1919 and Louisiana since 1953.

4.  TEXACO had obtained in 1971 and 1974 patents in the United States of America on technological improvements for the reinjection of formation waters, and perfectly knew about the recommendations expedited in 1976 by the environmental authorities of the United States of America regarding the need to dispose of toxic waste contained in formation water, using a subsoil reinjection system.

5.  Although knowing the nature of the techniques, methods and procedures that were being employed in the activities related to the exploration and drilling of hydrocarbons in Ecuador, and the harmful effects for the environment and human health that were being produced, TEXACO INC. maintained and repeated them, or at least tolerated their maintenance and repeated them for more than 25 years, instead of introducing alternative techniques, more secure and less harmful for the environment and health, whose existence they had sufficient and opportune knowledge of. Logically, the contaminant practices resulted less expensive, so that TEXACO chose the degradation of the environment not the reduction of profits.

6.  In effect, from the beginning of its operations, TEXACO did not observe the parameters recognized as best practices within the petroleum industry and the procedures recommended by itself and applied in the United States of America and other countries.

7.  The practices established by TEXACO did not comply with the explicit regulations contained in clause 43 of the TEXACO-Gulf consortium contract of 1972 and the Supreme Decree 925 of 1973, to adopt measures for the protection of flora, fauna and other



(seal) Secretary
Presidency of the Supreme Court

Lcai (iuja)

**Seventy seven 77**

consequently, of their means of survival, their life style and practices, threatening their future identity. For example, Cofán People have lost almost the totality of their territory and the population has rapidly and constantly decreased. Dramatically similar are the effects suffered by the Siona, Secoya, Huaorani and Kichwa people.

5. The harmful effect of these acts and omissions, which constituted a current practice in the TEXACO operations, is not limited in time to the moment when the act or omission happened. Contaminant effects and danger to health and goods have remained through time and today still persist, so that it is important not to consider just the damage already produced but the potential injuries that the contaminating materials spilled in the environment could produce in the future.

## IV. TEXACO INC's liability

1. To employ a subsidiary company, in this case TEXPET, created to develop operations in Ecuador as a different corporation, with little equity and patrimony, very much inferior to the real volume of its operations, belongs to a scheme thought for the clear purpose of limiting the impact of any complaint derived from its activities in the country. In reality, TEXPET was nothing more than a screen behind which TEXACO INC. acted, being proprietary by itself or through its subsidiaries of the total capital.

2. In effect TEXACO INC. directed, supervised and controlled the operations of its subsidiary TEXPET in Ecuador, and established operative procedures and techniques to be employed in exploration and drilling activities.

3. Nevertheless long before TEXACO initiated through its subsidiary the exploration and drilling for petroleum in Ecuador, not only that in the

(seal) Secretary
Presidency of the Superior Court
Nueva Loja

Sachas, Enokangui, San Carlos y San Sebastián del Coca in La Joya de los Sachas County; as well as in Sucumbios Province the inhabitants of El Dorado de Cascales in Cascales County; Nueva Loja, El Eno, General Farfán y Durero in Lago Agrio County; Shushufindi, Limoncocha and San Pedro in Shushufindi County; and those of Palma Roja in Putumayo County. Studies have demonstrated that nearly 83% of the population has suffered illness due to contamination, being the most affected children under 14 years old. The mortality rate in the communities exposed to the petroleum contamination surpasses the national average rate. Cancer incidence as death cause triples the national average rate and surpasses five times the average of Amazon provinces.

3. Nearly 75% of the population who lives in areas next to wells and facilities has been affected by total or partial loss of crops. Native fauna and domestic animals suffered alteration of their ecosystem. The animals ingested toxic products through water and food, or simply died trapped in the ditches. Studies carried out in the zone have demonstrated that 94% of families have suffered loss of animals because of petroleum contamination, most frequently cows, pigs and hens. Besides the deaths, the peasants found their animals' productive capacity diminished: abortion, weight loss, sterility, milk scarcity. To appreciate the real impact it is necessary to know that for the people of the zone breeding animals is not just for internal consumption but also for commerce and a reserve in times of need, consequently TEXACO practices weakened more the already fragile family economy and produced a real increase of poverty among the peasant population.

4. Effects derived from the application of methods and procedures described, were specially devastating for the five indigenous people of the zone, who also suffered the violent destruction of their natural habitat and,



Presidency of the Superior Court
Loja

Leaf (hoja)

Seventy six 76

6. TEXACO opened hundreds of trenches or ditches. When it concluded its operations in 1992, some of them were simply covered leaving inside all its contaminant potential. Afterwards, when forced by the circumstances to become engaged in conducting environmental remediation tasks, it carried out cleaning tasks in many ditches, but the resulting toxic wastes were buried in concrete recipients, such as the so called "sarcophagus" built next to Central Sacha Facility.

7. Furthermore, TEXACO burnt waste gases without taking preventive measures to mitigate contamination of highly toxic particles. It is calculated that TEXACO burnt a total of 235 thousand million cubic feet of gas.

8. TEXACO continuously threw out crude waste on the zone roads, with the purpose of avoiding the huge amounts of dust resulting from the transit of equipment and personnel during drought periods.

III. Damages and injured population

1. The procedures described contaminated soil, natural riverbeds and air; destroyed aquatic life, natural vegetation and crops. Even the rain water was contaminated because of gas dispersion in air resulting from combustion of rudimentary burners.

2. As a consequence of this brutal environmental deterioration, the population's health and life expectations were severely affected, under toxic effects, for having direct contact with them through water, soil, by ingestion, breathing contaminated air, drinking water or consuming animal products exposed to contaminants. In this way were directly injured in Orellana Province the inhabitants of the parishes Dayuma, Puerto Francisco de Orellana y Taracoa in Orellana County; La Joya de los



(seal) Secretary
Presidency of the Superior Court of Justice
Loja

Lear (roja)

3. Petroleum does not exist pure in the subsoil but it is mixed with water and other substances. To take advantage of the crude is necessary to separate it. This process was accomplished in a facility to which the crude was directed using pipelines from the zone wells. In each facility there were, generally, two tanks joined by a pipeline system installed underneath. Oil floats above water so that separation took place in the first tank as a result of the water coming through the pipeline beneath the next tank, in which the operation was repeated. The percentage of oil in the second tank was less and the formation water passed to a ditch and from there to a second or third ditch by the same procedure. On the surface of the ditches there remained floating oil <u>Formation waters passed from the last ditch to rivers and natural riverbeds without further treatment.</u>

4. The older the well and the more it has been drilled the higher the percentage of formation waters and so with the years, the contaminant effect instead of being reduced, progressively increases. Furthermore, TEXACO developed a procedure to facilitate the crude extraction, which consisted of injecting water from the natural riverbeds mixed with chemicals into the well. This mixture came out with the formation water and after going through the described   process, finally came back contaminated to the natural riverbed and in this way the contamination effect was multiplied.

5. It was calculated that between 1972 and 1992 TEXACO contaminated soil, marshes swamps, rivers and natural riverbeds with 464.766.540 barrels of formation waters. These formation waters are highly toxic because they contain petroleum (up to five thousand parts per million) and are supersaturated with heavy metal salts such as cadmium and mercury. <u>Instead of being spilled in rivers and swamps, formation waters after treatment to reduce its contaminant potential, should have been reinjected at the same level from which they were extracted.</u>

(seal) Secretary
Presidency of the Superior Court
Nueva Loja

Leal (hoja)    5 son

**Seventy five 75**

11. The environmental remediation works executed by TEXPET were insufficient or not adequately carried out. The truth is that by this date there are still contaminant elements dumped in the environment as a result of inadequate and harmful practices employed by TEXACO, which continue to produce environmental and personal injuries, that neither the mentioned company nor its subsidiary have repaired.

12. In October 9 2001, TEXACO INC. and CHEVRON merged, and consequently a new company, denominated CHEVRON TEXACO CORPORATION was born replacing the previously mentioned with regard to all obligations and rights. This company has its principal offices at 6001 Bollinger Canyon Road, San Ramon, California, 94583, in the United States of America.

II. Contaminant methods employed by TEXACO

1. When drilling a well, TEXACO used a variety of chemical substances mixed with water in order to cool down and lubricate the drilling system. These substances are highly toxic. In the final stages of the process were also added heavy elements in order to prevent the oil from coming to the surface because of the pressure. These are also highly toxic chemicals. All this was mixed with fragments of rock, silicas cuttings and other solid waste from the subsoil, forming what is called drilling muds which were accumulated in a pit near the well when not discharged directly into the rivers or streams. It was simply an open ditch on the surface. Because neither the bottom nor the walls of the ditch were adequate with waterproof materials, a continuous flow of filtrated materials contaminated not only the soil but also the underground water sources. Additionally, since they were open, the rain increased the contents producing spills over the edges of the ditches.

2. After drilling the well and before it was connected to the pipeline in order to transport the crude oil, tests were practiced and so the extracted oil was also spilled into the ditches.



(seal) Secretary
Presidency of the Superior Court
Nueva Loja
SECRETARIA
PRESIDENCIA

Leal (hoja)

Seventy eight 78

natural resources, and to avoid air, water and soil contamination.

8.  The practices established by TEXACO also violated explicit obligations imposed
    by Ecuadorian legislation through regulations that were expedited during the
    time of its operations development:

    a.  **Ley de Hidrocarburos de 1971 (RO 322, 1-X-71),** this law obliged those
        who developed exploration and exploitation of petroleum activities to
        adopt all the necessary measures for the protection of flora, fauna and
        other natural resources, and to avoid water, air and soil contamination
        (article 29, literals s and t). The same requirements were maintained in
        article 31 of the Codificación de la **Ley de Hidrocarburos of 1978 (RO
        711, 15-XI-78).** With the reform of this regulation by article 12 **of the
        Ley 101 (RO 306, 13-VIII-82),** the petroleum companies were required
        to put in practice plans in order to avoid the negative effects of exploration
        and exploitation of hydrocarbons on the economic and social organization
        of the population settled in areas where such activities take place; and that
        while conducting the petroleum operations not only the laws and
        regulations regarding environmental protection must be respected, but also
        those derived from the "international practice for the preservation of
        ichthyologic wealth and farming industry".

    b.  **Ley de Preservación y Control de la Contaminación Ambiental,**
        expedited by Supreme Decree published in the Official Registry (RO 97,
        May 31 1976), prohibits the discharge of contaminant elements to the
        atmosphere, in case these could damage life or human health, flora, fauna
        and the resources and properties of the State or individuals (article 11). It
        also prohibits discharge of waste or residual waters that contain
        damaging contaminant elements for human health or fauna, flora or the
        properties, in rivers



(seal) Secretary
Presidency of the Superior Court
Nueva Loja

or water courses, in natural or artificial lakes, as well as the its filtration in the soil (Article 16); and, finally prohibits to discharge contaminants that could alter the quality of the soil and affect human health, flora, fauna, natural resources and other goods (Article 20).

9.  Because the acts and omissions described above are directly imputed to its manifest intention or to its negligence, TEXACO INC. made itself civilly responsible for the damages caused, and acquired the obligation to repair them. Such responsibility and its consequent obligation passed, by virtue and as result of the merger mentioned previously, to CHEVRON TEXACO CORPORATION.

V. Legal Basis

1.  The obligation to repair the damage resulting from dolus or negligence has existed in the Ecuadorian Law since the beginning of the Republic. In this case it is enough to mention its explicit acknowledgment by articles 2241 and 2256 of the Civil Code, in force at the moment in which the facts that generated the damages took place.

2.  Article 15 of the 169 Agreement of the International Labor Organization recognizes the indigenous people affected by the deterioration of its natural surrounding and the loss of their territory, resources or traditional means for survival, the right to receive a compensation that allows them to face their new life conditions, without impairment of their cultural identity and their collective rights.

3.  Regarding the right to claim the reparation derived from environmental damage, the following should be considered:

    a.  The right to live in a healthy environment, ecologically balanced and free of contamination is guaranteed to every person by numeral 6 article 23 of the Ecuadorian Constitution, , which article 86 declares that the preservation of the environment, the conservation of the



(seal) Secretary
Presidency of the Superior Court

ɪᴄɑɪ (ʀᴏjɑ)      ] *auth*.
                     |*)*

Seventy nine 79

ecosystems and biodiversity, are of public interest. The environmental
rights are constitutionally recognized as collective rights. This is why they
are regarded within Chapter 5, Title III of the Ecuadorian Constitution.
Consequently, any person can complain for the violation of such rights
and claim their reparation.

b.  When it is necessary to avoid a potential or contingent damage that
threatens undetermined persons, as it occurs with contaminant
materials that are still in the environment, article 2260 of the Civil Code
grants popular action to demand from the one who generated the threat, to
remove what causes it or make it cease.

c.  Article 41 of the **Ley de Gestión Ambiental** (Law 99-37, RO 245, July 30
1999) grants public action to denounce the violation of environmental
regulations, and article 43 of the same law, recognizes to natural persons
or corporations, and to human groups joined by a common interest and
affected directly by the damaging act or omission, the right to interpose
actions for damage and loss and for health or environmental deterioration,
including biodiversity with its own constitutive elements.

VI. Claim

Based on the mentioned legal regulations, as members of the affected communities and
guarding our rights collectively recognized, the appearing persons demand of
CHEVRON TEXACO CORPORATION, already previously identified in the
background, the following:

1.  The elimination or removal of the contaminant elements that still threaten the
environment and health of the inhabitants. Consequently, the sentence shall
dispose:

Presidency of the Superior Court    (seal) Secretary



a.  Removal and adequate treatment and disposal of waste and contaminant materials still existing in pits or ditches opened by TEXACO and simply plugged, covered or inadequately treated;

b.  Sanitation of rivers, lakes, swamps, wetlands and natural and artificial streams and the adequate disposal of all waste materials;

c.  Removal of all the structural elements and machinery that stand out in wells, facilities and sub facilities that are closed or abandoned, as well as the pipelines and other similar elements related to such wells; and,

d.  In general, cleaning of lands, crop fields, crops, streets, roads and buildings where still exist contaminants left-overs produced or generated as a consequence of the operations conducted by TEXACO, including the deposits for contaminant waste built as part of the badly executed environmental cleaning tasks.

2.  The reparation of environmental damages, according to article 43 of the **Ley de Gestión Ambiental.** Consequently the sentence shall order:

a.  Execution of necessary works in the pits opened by TEXACO, in order to recover the natural characteristics and conditions that the soil and the surroundings had before the damages;

b.  Contract on charge of the defendant, specialized persons or institutions in order to design and carry out a recuperation plan for the native fauna and flora, where is possible to do so;

Presidency of the Superior Court

Leal (hoja)

Eighty 80

  c. Contract on charge of the defendant, specialized persons or institutions  in order to design and carry out a plan for the regeneration of aquatic life;

  d. Contract on charge of the defendant, specialized persons or institutions  in order to design and carry out a plan for the health improvement and medical monitoring of the inhabitants affected by contamination.

The resources necessary to cover the cost of activities whose execution is demanded, in the amount that shall be determined by an expert, according to the penultimate clause of article 43 of the **Ley de Gestión Ambiental**, shall be delivered to the Amazon Defense Front (Frente de Defensa de la Amazonía), with the purpose of using them exclusively for the ends determined in the sentence, with the concourse and assessment of specialized international institutions.

3. The payment of ten percent of the value that represents the amount of the reparations, on regard to the second clause of article 43 of the **Ley de Gestión Ambiental**; as well as the payment of costs of action, and what is worth the time and diligence employed in it, according to article 2261 of the Civil Code. What is ordered to pay for these concepts shall be delivered, for explicit petition of the plaintiffs, to the Amazon Defense Front (Frente de Defensa de la Amazonía).

VII. Jurisdiction, amount and proceeding

1. The second clause of article 42 of the **Ley de Gestión Ambiental**, grants jurisdiction to the President of the Superior Court of the place where the environmental affectation is produced, to the knowledge of the civil actions originating on environmental damage. In case more than one jurisdiction is involved, jurisdiction is assigned to the President of any of the corresponding Superior Courts.

(seal) Secretary
Presidency of the Superior Court
Nueva Loja



Leaf (loja)

2. The last clause of article 43 of the **Ley de Gestión Ambiental** orders that the civil disputes for damage and loss originated in environmental affectation, take the summary verbal procedure.

3. The amount, regarding the nature of the complaint, is at the moment indeterminate.

VIII. Citation and notifications

1. Mister DAVID O' REILLY, legal representative of CHEVRON TEXACO CORPORATION, must receive citation in the principal offices of the Company, located at 6001 Bollinger Canyon Road, San Ramón, California, in the United States of America, by means of rogatory letters, that through the Ministry of Foreign Affairs and the corresponding diplomatic channels, must be delivered to the judicial authorities of the mentioned State.

2. The plaintiffs shall receive notifications in the Judicial Mailbox number 78.

As judicial procurator of Angel Justino Piaguage Lucitante, regarding the attached power and offering ratification of the others,

(signature)
Alberto Wray
Reg. 1105, Quito

(seal)

SUPERIOR COURT OF JUSTICE OF NUEVA LOJA
Received in Nueva Loja, today, May 07, 2003 ....at
11h30 ...with -04- attached copies 43leafs +judicial
fee.........I certify,
(signature)
SECRETARY OF THE COURT

(seal) Secretary
Presidency of the Superior Court
Nueva Loja

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

IN RE LETTER OF REQUEST        )
FROM EQUADOR                   )
IN THE MATTER OF               )    Misc No. 08-
FAJARDO V. CHEVRON             )
                        <u>ORDER</u>

      Upon application of the United States of America; and upon examination of a letter of request from Equador whose authorities are seeking certain testimony and information from individuals which may be found in this District, for use in a judicial proceeding in Equador and the Court being fully informed in the premises, it is hereby

      **ORDERED**, pursuant to Title 28, United States Code, Section 1782, that David L. Hall, Assistant United States Attorney, hereby is appointed as Commissioner of this Court and is hereby directed to execute the letter of request from the Equador authorities as follows:

      1. to take such steps as are necessary, including issuance of commissioner's subpoenas to be served on persons within the jurisdiction of this Court, to collect the evidence requested;

      2. provide notice with respect to the collection of evidence to those persons identified in the requests as parties to whom notice should be given (and no notice to any other party

shall be required);

       3. adopt procedures to collect the evidence requested consistent with its use as evidence in a proceeding before a Court in Equador, which procedures may be specified in the request or provided by the Equador authorities;

       4. seek such further orders of this Court as may be necessary to execute this request; and

       5. certify and submit the evidence collected to the Office of International Affairs, Civil Division, United States Department of Justice, or as otherwise directed by that office for transmission to the Equador authorities.

       IT IS FURTHER ORDERED that, in collecting the evidence requested, the Commissioner may be accompanied by persons whose presence or participation is authorized by the Commissioner.

       Dated: This _____ day of _____, 2008.


                        _____
                        United States District Court Judge